IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TRUSTEES OF THE PLUMBERS AND
PIPEFITTERS NATIONAL PENSION FUND, *et
al*,                                                              CV-09-033-ST

                 Plaintiffs,                            OPINION AND ORDER

     v.

SYMMETRY CONSTRUCTION SERVICES
CORPORATION and SYMMETRY
CONSTRUCTION, INC.,

                Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiffs filed this action on January 9, 2009, under the Employee Retirement Income

Security Act ("ERISA"), 29 USC §§ 1001 *et seq*, and the Labor Management Relations Act

("LMRA"), 29 USC §§ 141 *et seq*, to collect unpaid fringe benefit contributions and union dues,

and associated liquidated damages, interest, attorney fees, and payroll examination fees. The

1 - OPINION AND ORDER

First Claim seeks sums allegedly due from defendant Symmetry Construction Services

Corporation ("Symmetry Construction Services") under an agreement executed by plaintiff

Plumbers, Steamfitters and Marine Fitters Local No. 290 ("the Union") and Symmetry

Construction Services.  The Second Claim seeks similar sums allegedly due from defendant

Symmetry Construction, Inc. ("Symmetry Construction") as the "alter ego"of Symmetry

Construction Services.

 A court trial was set for February 24, 2010 (docket # 17).  Before trial, all parties

consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with FRCP 73 and 28 USC § 636(c) (docket # 23).

 On February 11, 2010, shortly before trial, Symmetry Construction moved to stay all

pretrial deadlines because it intended to file for bankruptcy and Symmetry Construction Services

was no longer in business and had no assets (docket # 24).  That motion was granted (docket

# 26).  On August 26, 2010, Symmetry Construction reported that it had retained a bankruptcy

attorney and was collecting the supporting documentation in order to file the bankruptcy petition

(docket # 30).  On November 5, 2010, after losing contact with their clients, defendants'

attorneys filed a motion to withdraw (docket # 31), which this court granted (docket # 33).  This

court then advised defendants that a corporation could only appear through an attorney (docket

# 34).  No attorney has made an appearance on behalf of either defendant.  Plaintiffs

subsequently reported on February 28, 2011, that the telephone number for defendants had been

disconnected, that mail sent to their address was returned as undeliverable, and that Symmetry

Construction Services had been administratively dissolved by the Oregon Corporation Division

on June 27, 2008 (docket # 39).

Plaintiffs have now moved for summary judgment on both claims (docket # 40).

Although this court issued a Summary Judgment Advice Order to defendants (docket # 46), they

filed no response to plaintiffs' motion.  For the reasons set forth below, plaintiffs' motion is

granted.

## STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law.  FRCP 56(c).  The initial

burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the

production of probative evidence that there remains an issue of fact to be tried.  *Celotex Corp. v.

Catrett*, 477 US 317, 323 (1986).  On a motion for summary judgment, the court "must view the

evidence on summary judgment in the light most favorable to the non-moving party and draw all

reasonable inferences in favor of that party."  *Nicholson v. Hyannis Air Serv., Inc.*, 580 F3d 1116,

1122 n1 (9th Cir 2009) (internal quotation omitted).

## UNDISPUTED FACTS

The following facts are found in the declarations and exhibits submitted by plaintiffs.  To

show the absence of any genuine issue of material fact, plaintiffs rely in part on their requests for

admissions propounded to defendants.  Buckley Decl., ¶¶ 4-5 & Exs. A & B.  Neither defendant

responded to those requests.  *Id*, ¶ 6.  As a result, the matters set forth in those requests are

deemed admitted.  FRCP 36(a)(3).

///

///

3 - OPINION AND ORDER

Plaintiffs are the Union, a labor organization, and the Trustees of nine trust funds created by written trust agreements. The trust funds are "multiemployer plans" as that term is defined in ERISA, 29 USC § 1002(37)(A).

Symmetry Construction Services is an inactive Oregon corporation which was administratively dissolved on June 27, 2008. It was owned and operated by Betty Shannon ("Betty"), the majority stockholder and corporate secretary, and her daughter-in-law, Christine Shannon ("Christine"), the minority stockholder and corporate president. The day-to-day business and operating decisions were made by Betty, Christine and/or Don Shannon ("Don"), the son of Betty and husband of Christine. Don also was in charge of labor relations. The principal business of Symmetry Construction Services was as a general contractor performing plumbing, heating, ventilating and air conditioning installation, repair and service work. Its principal client/customer was Pac Trust, aka Pacific Realty Associates, L.P. From November 1, 2003, through May 31, 2008, Symmetry Construction Services was an "employer" as that term is defined in ERISA, 29 USC § 1002(5), and the LMRA, 29 USC § 152(2), and was engaged in an "industry or activity affecting commerce" as defined in ERISA, 29 USC § 1002(12), and the LMRA, 29 USC § 142(1).

On or about July 28, 2003, Symmetry Construction Services and the Union entered into a Compliance Agreement for Master Labor Agreement ("Compliance Agreement"). Under the Compliance Agreement, Symmetry Construction Services agreed to be bound by and adhere to the terms of the Master Labor Agreement & Working Rules ("Master Labor Agreement") that the Union had negotiated with a multiemployer bargaining association known as the Plumbing and Piping Industry Council, Inc., dba Plumbing and Mechanical Contractors Association.

Based on the terms of the Compliance Agreement and the terms of the Master Labor Agreement, Symmetry Construction Services agreed to be bound by the terms and conditions of the Trust Agreements, as amended, that created the various trust funds. It also agreed to pay fringe benefit contributions on behalf of employees who performed work covered by the Compliance Agreement and the Master Labor Agreement to the Trustees of the trust funds and to remit union dues to the Union. It further agreed to file monthly remittance report forms and to pay its monthly fringe benefit contributions and union dues to plaintiffs on behalf of its employees who performed work covered by the Compliance Agreement and the Master Labor Agreement by the 20th day of the month following the month in which the work was performed.

Symmetry Construction was incorporated on April 17, 2007, and is an active Oregon corporation. Its majority shareholder and corporate president is Don Shannon. The day-to-day business and operating decisions were made by Don, Betty and/or Christine, and Don is in charge of labor relations.

On or about September 10, 2007, Symmetry Construction Services agreed to sell all of its business assets to Symmetry Construction, primarily to avoid the collective bargaining agreement between the Union and Symmetry Construction Services. It is engaged in the same principal business and has the same principal client/customer, business address, telephone number, fax number, and email address as Symmetry Construction Services. It also has several of the same employees who performed the same work for Symmetry Construction Services. From April 17, 2007, through May 31, 2008, Symmetry Construction was an "employer" under ERISA and the LMRA and engaged in an "industry or activity affecting commerce" as defined in ERISA and the LMRA.

Plaintiffs hired a certified public accounting firm to perform a payroll examination of Symmetry Construction Services's payroll books and records for the time period November 1, 2003, through June 30, 2007, and of Symmetry Construction's payroll books and records for the time period July 1, 2007, through May 31, 2008. According to that examination, Symmetry Construction Services underreported and failed to report hours of fringe benefit contributions and union dues for some of their employees who performed work covered by the collective bargaining agreement, and Symmetry Construction failed to pay any fringe benefits contributions dues to plaintiffs.

## DISCUSSION

### I. First Claim

Based on this court's review of plaintiffs' unopposed submissions, it is undisputed that Symmetry Construction Services has not paid all contractually required fringe benefit contributions and union dues to plaintiffs. Therefore, plaintiffs are entitled to summary judgment on the First Claim. Based on the results of the payroll examination, Symmetry Construction Services owes plaintiffs the following amounts for the time period of November 1, 2003, through June 30, 2007:

| | |
|---|---|
| Fringe Benefits Contributions and Union Dues: | $371,152.17 |
| Liquidated Damages: | 37,525.97 |
| Interest Calculated through November 26, 2008: | 90,483.86 |
| TOTAL | $499,162.00 |

Interest continues to accrue on the delinquent fringe benefits and union dues pursuant to the Trust Agreements and Master Labor Agreement at varying rates from November 27, 2008,

until judgment is entered.  In addition, under the Trust Agreements, the Master Labor Agreement and ERISA, 29 USC § 1132(g)(2)(D) & (E), plaintiffs are entitled to recover their reasonable attorney fees incurred and the sum of $3,220.00 for the payroll examination.

## II.  Second Claim

The more difficult issue is whether plaintiffs also are entitled to summary judgment on their Second Claim against Symmetry Construction for unpaid fringe benefit contributions and union dues.  Unlike Symmetry Construction Services, Symmetry Construction did not execute a Compliance Agreement with the Union.  Nonetheless, plaintiffs claim that it may be held liable as the "alter ego" of Symmetry Construction Services.

As plaintiffs acknowledge, the same contractor may conduct business through a "double breasted" operation, "one in which the same contractor owns both union and non-union companies for legitimate business reasons." *UA Local 343 of the United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Ind. of the U. S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F3d 1465, 1469 (9th Cir 1995) ("*UA Local 343*").   However, due to potential for abuse by individuals operating "double breasted" companies to avoid their collective bargaining agreements, the courts and the National Labor Relations Board ("NLRB") have developed an "alter ego" theory.   *Id* at 1469-70.  Under that theory, a non-union company is bound by the terms of a collective bargaining agreement signed by a union company if the two companies operate as a "single employer" and if the non-union company is "being used 'in a sham effort to avoid collective bargaining obligations,' rather than for the pursuit of legitimate business objectives untainted by 'union animus.'"  *Id* at 1470 (citations omitted).

///

7 - OPINION AND ORDER

Plaintiffs claim that defendants constitute a "single employer" under the following applicable criteria:

> ( 1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations. No one factor is controlling nor need all criteria be present. The most important factor is centralized control of labor relations, which can be demonstrated either by showing common control of day-to-day labor matters, or by showing that the person in charge of the union company's labor relations made the decision that the second company would be non-union.

*UA Local 343*, 48 F3d at 1471 (citations omitted).

The undisputed facts support plaintiffs' claim. First is the issue of common ownership. Common ownership need not be identical, but only interrelated. *N.L.R.B. v. Carson Cable TV*, 795 F2d 879, 882 (9th Cir 1986) ("Although it is true that no one entity has a controlling interest in all four entities and that there is no complete identity of ownership interests, it is apparent that a pattern of common ownership interest exists among the four businesses through the combined ownership interests of TCI and Roseman"); *J.M. Tanaka Constr., Inc. v. N.L.R.B.*, 675 F2d 1029, 1034-35 (9th Cir 1982) (common ownership existed even though one entity was owned by one individual and the other entity was owned by that individual and 21 other members of his family). Here defendants were both owned by members of the Shannon family, but one person did not own stock in both companies. Based on the family relationship alone, this court cannot conclude that common ownership exists between the two defendants. However, the absence of this criteria is heavily outweighed by the other three criteria.

The two defendants clearly share common management. Christine Shannon was the corporate president of Symmetry Construction Services and is the corporate secretary of

Symmetry Construction.  Furthermore, Don, Betty and Christine Shannon all were involved in the day-to-day business and operating decisions of both companies.

Third, both defendants shared an interrelation of operations.  They had the same principal business, principal client/customer, business address, telephone number, fax number, and e-mail address, and also employed several of the same employees.  In addition, in the September 2007 Agreement for the Sale and Purchase of Business Assets, the parties acknowledged that "[ t]he purpose of this transaction is to start a new business using the same assets of the Seller" and that "there is no actual or potential conflict of interest, as the Buyer and Seller are, in essence, the same party."

Fourth, the same person (Don Shannon) was in charge of labor relations for both defendants.

In short, the undisputed evidence supports three of the four criteria for both defendants to be deemed a "single employer."

The second element of the "alter ego" analysis requires evidence of an intent to avoid collective bargaining obligations.  In that regard, Symmetry Construction has admitted that the primary reason for its creation was to avoid the collective bargaining agreement between the Union and Symmetry Construction Services.  Furthermore, the purpose of the asset purchase agreement was to start a new business using the assets of the old business, such the two companies were in essence the same entity.  In fact, Symmetry Construction Services transferred at least one job to Symmetry Construction mid-stream.  *See UA Local 343*, 48 F3d at 1472 (evidence of intent to avoid collective bargaining obligations included a transfer of several Nor-Cal projects to North Bay abruptly in the middle of the job).  Accordingly, the undisputed

evidence leads to the conclusion that Symmetry Construction is the "alter ego" of Symmetry Construction Services and, thus, is bound by the terms of the Compliance Agreement and Master Labor Agreement.

A number of Symmetry Construction's employees performed work that was covered by the Compliance Agreement and Master Labor Agreement for which Symmetry Construction did not pay fringe benefit contributions to plaintiffs. Thus, based on the payroll examination, the following sums are due and owing by Symmetry Construction for the time period of July 1, 2007, through May 31, 2008:

| | |
|---|---|
| Fringe Benefits Contributions and Union Dues: | $134,852.08 |
| Liquidated Damages: | 13,554.29 |
| Interest Calculated through November 26,2008: | 9,453.63 |
| TOTAL | $157,860.00 |

Interest continues to accrue on the delinquent fringe benefits and union dues pursuant to the Trust Agreements and Master Labor Agreement at varying rates from November 27, 2008, until judgment is entered. In addition, under the Trust Agreements, the Master Labor Agreement and ERISA, 29 USC § 1132(g)(2)(D) & (E), plaintiffs are entitled to recover their reasonable attorney fees.

///

///

///

///

///

**ORDER**

Plaintiffs' Motion for Summary Judgment (docket # 40) is GRANTED. Accordingly, plaintiffs are entitled to a judgment against defendant Symmetry Construction Service Corporation in the sum of $499,162.00, together with accruing interest, plus reasonable attorney fees and a payroll examination fee of $3,220.00 and against defendant Symmetry Construction, Inc., in the sum of $157,860.00, together with accruing interest, plus reasonable attorney fees. Plaintiffs shall prepare and submit a form of Judgment to the court for entry.

DATED this 31st day of May, 2011.

s/ Janice M  Stewart_____
Janice M. Stewart
United States Magistrate Judge

11 - OPINION AND ORDER